UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MARK CLOUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CASE NO. 4:14-cv-00080-JEO |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Mark Clough brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability, disability insurance benefits, and supplemental security income ("SSI"). (Doc. 1).[1]  He has also filed a motion to remand pursuant to sentence four of § 405(g). (Doc. 11).  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013.  The parties have consented to the jurisdiction of this court for disposition of this matter. (Doc. 12).  *See* 28 U.S.C. § 636(c), FED. R. CIV. P.  73(a).   Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed and that Clough's motion to remand is due to be denied.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

1

## I.  PROCEDURAL HISTORY

Clough filed applications for a period of disability, disability insurance benefits, and SSI in April 2010, alleging disability beginning April 7, 2010, due to seizures, anxiety, a back injury, and leg problems. (R. 143, 147, 166).[2]  His claim was denied initially. (R. 114-15).  He then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 22, 2012.  (R. 81-113 ).  Clough was represented by counsel at the hearing. (R. 81).  On June 15, 2012, the ALJ issued his decision finding that Clough was not disabled.  (R. 31-42).

Clough requested the Appeals Council to review the ALJ's decision and submitted additional evidence regarding his alleged disability. (R. 15, 255-61).  The Appeals Council denied Clough's request for review on November 12, 2013.  (R. 1-7).  On that date, the ALJ's decision became the final decision of the Commissioner.  Clough then filed this action for judicial review under 42 U.S.C. § 405(g). (Doc. 1).

## II.  STANDARD OF REVIEW[3]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached

---

[2]References to "R. __" are to the page number of the administrative record, which is encompassed within Docs. 6-1 through 6-8.

[3]In general, the legal standards applied are the same whether a claimant seeks disability insurance benefits or SSI.  However, separate, parallel statutes and regulations exist for disability insurance benefits and SSI claims.  Therefore, citations in this report should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in quoted court decisions.

is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i-v) and 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

(1) Is the claimant presently unemployed;

(2) Is the claimant's impairment severe;

(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1 [the "Listings"];

(4) Is the claimant unable to perform his or her former occupation;

(5) Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). An affirmative answer to any of the above questions leads either to the next question or, at steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." *Id.; see* 20 C.F.R. §§ 404.1520 and 416.920.

## IV.  EVIDENCE BEFORE THE ALJ

Clough was 34 years old at the time of the ALJ's decision. (R. 84). He has a 9th grade education. (*Id.*) His work history includes work as a sheetrock hanger, plumber's helper, carpenter, and lathe operator. (R. 84-87). He also has experience installing metal roofs. (R. 88). Clough alleges that he became unable to work due to seizures, anxiety, a back injury, and leg problems. (R. 166).

Clough has a history of suffering from seizures. (R. 88, 196). In a Seizure Questionnaire he completed in August 2010 in connection with his application for disability benefits, he

reported that he experienced one seizure per month. (R. 196). He further reported that he was not taking his seizure medication–Dilantin–regularly because he could not afford it. (R. 197). At the hearing in May 2012, Clough testified that he had resumed taking Dilantin two months earlier and had experienced two bad seizures and maybe a couple of seizures in his sleep since going back on the medication. (R. 89-90). He also testified that he had been averaging about four seizures a month before resuming the medication. (R. 91). Clough said that he loses consciousness during his seizures and that all of his muscles are sore when he comes out of them. (R. 90). He has no warning as to when the seizures will occur. (*Id.*)

Clough testified that he was injured in a motor vehicle accident in 2000. (R. 95). He provided no medical records regarding the extent of his injuries, but testified that he broke both of his legs in the accident and has a steel rod in his right leg and a plate and six screws in his left ankle. (*Id.*) Clough said that his right hip hurts "pretty good" and that his left ankle swells and hurts "a lot." (*Id.*) He rated his hip and ankle pain as a 4 or 5 on a scale of zero to 10. (R. 106).

On October 2, 2009, Clough experienced a seizure while working on a roof and fell and injured his back. (R. 270). Clough testified that he was not taking his seizure medication at that time. (R. 91). He was admitted to the emergency room at Marshall Medical Center South, where a computerized tomography scan of his spine revealed a compression fracture of T12 and a fracture of the right transverse process of L1. (R. 271). Ten days later Clough was examined at North Alabama Family Practice. (R. 270). Clough's physician, Dr. Andrew Reiland, arranged for Clough to be examined by a neurosurgeon, but Clough did not keep the appointment because he could not afford to pay for it. (R. 265, 268). Dr Reiland subsequently released Clough from his care, noting that Clough "did not do anything" he was asked to do to treat his seizure disorder.

(R. 265).

Clough testified that his back injury causes him to experience pain in his shoulders and lower back and that it is hard for him to bend over and pick things up. (R. 93). He said the pain in his back is "constant," especially when he sits or stands in one place too long. (*Id.*) He takes Tylenol for the pain, which he rated as a 7 out of 10 on an average day. (R. 93, 102).

Clough testified that he has suffered from anxiety since he injured his back. (R. 96). He said that the anxiety makes it hard to go out in public and that he experiences panic attacks where it "feels like the walls are closing in" and he starts hyperventilating. (R. 97). He said he was taking hydroxyzine for his anxiety but had not received any formal treatment for the disorder. (R. 96-97).

Clough testified that his pain interferes with his ability to sleep and affects his memory and concentration. (R. 98). He said that he stays home most of the day and spends most of his time lying down. (R. 94, 99). He does some cooking and cleaning, watches television, and exercises. (R. 100). He cannot drive because his license was revoked after he fell from the roof in 2009. (R. 101).

In September 2010, after Clough applied for disability benefits and SSI, he was examined by Dr. Alvin Tenchavez, a consultative physician. (R. 300-02). Dr. Tenchavez noted that Clough had normal reflexes and could heel, toe, and tandem walk and could stoop and rise on his knees. (R. 302). He further noted that Clough had normal grip and bicep testing; negative straight leg raising; full 5/5 strength everywhere; and no pain, restriction, or swelling in his joints, including the lower back. (*Id.*) Dr. Tenchavez's diagnostic assessment was seizure disorder, chronic low back pain, and nicotine dependence. (*Id.*)

In October 2010, Clough was examined by Jack Bentley, Jr., a consultative psychologist. (R. 304-306). Dr. Bentley observed that Clough was able to read and write reasonably well; that there was no impairment in his communication skills; that his tertiary and immediate memories were intact; and that he was able to complete his activities of daily living without assistance. (R. 305-06). Dr. Bentley estimated Clough's cognitive functioning to fall in the borderline range. (R. 305). He noted that Clough was "mildly anxious" during his interview but was "not in any significant distress." (R. 306). Dr. Bentley's diagnostic impression of Clough included generalized anxiety disorder with occasional panic attacks and mild depressive disorder not otherwise specified (NOS). (*Id.*) He concluded that Clough had a favorable prognosis for his present level of functioning. (*Id.*)

Dr. Keith Langford performed a consultative review of Clough's medical records in October 2010. (R. 307). Based on his review of the records, Dr. Langford determined that it was possible that Clough had pain "to some degree" as a result of his back injury, but that the pain "must not be severe." (*Id.*) He also opined that Clough needed to take seizure precautions. (*Id.*)

Dr. Robert Estock, a consultative psychiatrist, reviewed Clough's medical records in November 2010. (R. 308-21). Dr. Estock opined that Clough had no severe mental impairments and had only a mild restriction in his activities of daily living, only mild difficulties in social functioning, and only mild difficulties in maintaining concentration, persistence, or pace. (R. 308, 318). His overall opinion was that Clough's untreated mental condition was "currently less than severe and would improve even more with treatment, both currently [and] relating to the period before the insured status was last met. " (R. 320).

In March 2012, two months prior to the hearing before the ALJ, Clough sought treatment

at Rapid Care after suffering a seizure one week earlier. (R. 323)  He told the treating physician that he suffered from seizures and was in need of medication. (*Id.*)  He reported that he had last taken his seizure medication (Dilantin) about a year ago. (*Id.*)  He was prescribed a refill of his medication. (*Id.*)

Clough's most recent treatment prior to the hearing was on May 2, 2012, at Quality of Life Health Services. (R. 326-30).  The medical records reflect an assessment of seizure disorder, asymptomatic, and anxiety, recurrent. (R. 327-28).  He was prescribed Vistaril for his anxiety. (R. 328).

## V.  FINDINGS OF THE ALJ

After consideration of the entire record before him and application of the sequential evaluation process, the ALJ made the following findings:

The ALJ found that Clough met the insured status requirements of the Social Security Act through September 30, 2010, and that he had not engaged in substantial gainful activity since April 7, 2010, the alleged onset date of his disability.[5]  (R. 33).

The ALJ found that Clough has the following severe impairments: a history of epileptic seizures; a fracture of L1 transverse process; a comminuted compression fracture of T12; a history of gross medical non-compliance with treatment and medication; and generalized anxiety disorder and depression. (*Id.*)  He also found that Clough's right leg and left ankle fractures were non-severe impairments, noting that the fractures had healed and that there was no evidence the fractures were conditions causing anything more than minimal functional limitations or restrictions. (R. 34).

---

[5]*See* footnote 3.

The ALJ found that Clough does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the Listings. (*Id.*)

The ALJ found that Clough has the residual functioning capacity[6] ("RFC") to perform light work, subject to the following limitations: he should avoid concentrated exposures to extremes of cold, heat, humidity, wetness, or vibration; he should do no driving of commercial vehicles; he should do no work from unprotected heights; he should do no work with hazardous machinery; he can do occasional to frequent stooping, kneeling, crouching, crawling and climbing of stairs and ramps; and he should do no climbing of ladders, ropes, or scaffolds. (R. 35). The ALJ further found that Clough can understand, remember and carry out instructions sufficient to perform low semi-skilled to 1-2-3 step tasks; that he can maintain concentration, persistence, and/or pace for periods of up to two hours sufficient to perform an 8-hour workday with routine breaks; that he can do low-stress work that involves occasional changes in the work setting and is goal-oriented rather than production rate pace work; and that he should deal with things rather than people in his work. (R. 35-36).

The ALJ found that Clough has past relevant work as a construction worker and lathe tender, but that he is unable to perform this work. (R. 40). Based on the testimony of a vocational expert, however, the ALJ further found that there are other jobs in the national economy that Clough can perform considering his age, education, work experience, and RFC. (R. 41). Such jobs include food preparation worker, hand packer, and cashier. (*Id.*) The ALJ thus concluded that Clough is not disabled. (R. 42).

---

[6]Residual functioning capacity is the most a claimant can do despite his impairment(s). *See* 20 C.F.R. § 404.1545(a)(1).

## VI. ANALYSIS

Clough urges the court to reverse or remand the Commissioner's decision on three grounds: (1) the Appeals Council denied his request for review without providing an adequate discussion of his new evidence; (2) the ALJ failed to consider the combination of his impairments; and (3) the ALJ failed to state adequate reasons for finding him not credible.[7] The court will address each argument in turn.

**A.     The Appeals Council Adequately Considered Clough's Additional Evidence**

After the ALJ rendered his decision that Clough was not disabled, Clough requested review by the Appeals Council and provided the Appeals Council with additional evidence consisting of medical records dated August 31, 2012, from Dr. Daniel Prince and medical records dated September 5, 2012, from Dr. David Wilson of Gadsden Psychological Services.[8][9] Relying primarily on *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980), Clough argues that "[w]hen a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals

---

[7] In his Memorandum in Support of Disability, Clough also argued that the ALJ erred in failing to order a consultative mental evaluation. (Doc. 10 at 19). He withdrew that argument in his Reply in Support of Disability. (Doc. 17 at 7).

[8] The administrative record does not include the medical records from Dr. Prince and Dr. Wilson, but does include the letters that Clough's attorneys submitted to the Appeals Council along with the records. (*See* R. 255-261). In addition, the Appeals Council stated in its denial of review that it looked at the medical records from Dr. Prince and Gadsden Psychological Services (Dr. Wilson) and that it was returning the records to Clough. (*See* R. 2). Therefore, the court is satisfied that the medical records were provided to the Appeals Council notwithstanding their omission from the administrative record. They are part of the record before the court, as they were attached as exhibits to Clough's motion to remand. (Docs. 11-1 through 11-4).

[9] In his Memorandum in Support of Disability, Clough asserts that he also provided the Appeals Council with medical records from Quality of Life dated October 8, 2012, through May 14, 2013. (Doc. 10 at 2). However, there is no evidence in the record before the court that Clough did, in fact, provide the Quality of Life records to the Appeals Council or, if he did, that they were received by the Appeals Council before it issued its denial of review on November 12, 2013. *See* the discussion at Section VII below.

Council must show in its written denial that it has adequately evaluated the new evidence." (Doc. 10 at 11) (emphasis omitted).  Clough contends that the Appeals Council failed to do so here.

The very argument Carney is making here was recently considered and rejected by the Eleventh Circuit.  In *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014), a claimant argued that "[w]hen the Appeals Council denied his request for review, it was required to provide a discussion of the new evidence he submitted to it."  In support of his argument, the claimant relied on *Epps* and two other cases, *Mann v. Gardner*, 380 F.2d 182 (5th Cir. 1967), and *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984).  The Eleventh Circuit rejected the claimant's argument, holding that "[n]othing in *Mann*, *Epps*, or *Bowen* ... requires the Appeals Council to provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell*, 771 F.3d at 783.  The court noted that "our conclusion that the Appeals Council is not required to explain its rationale for denying a request for review is consistent with the holdings of other circuits that have considered this issue. *See, e.g., Meyer v. Astrue*, 662 F.3d 700, 705–06 (4th Cir. 2011); *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1232 (9th Cir. 2011); *Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006); *Higginbotham v. Barnhart*, 405 F.3d 332, 335 n. 1 (5th Cir. 2005); *cf. Damato v. Sullivan*, 945 F.2d 982, 989 (7th Cir. 1991)." *Mitchell*, 771 F.3d at 784-85.

Here, the Appeals Council stated in its denial of review that it "looked at" the medical records from Dr. Prince and Gadsden Psychological Services (Dr. Wilson). (R. 2).  The Appeals Council noted that the ALJ's decision was dated June 15, 2012, and that the records from Dr. Prince and Gadsden Psychological Services were "about a later time." (*Id.*)  The Appeals Council thus determined that the records "[did] not affect the decision about whether [Clough was]

disabled beginning on or before June 15, 2012." (*Id.*)  No further discussion of this "new evidence" was required.

Moreover, the Appeals Council need only consider new evidence that is material and chronologically relevant.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (noting that the Appeals Council must consider "new, material, and chronologically relevant evidence").  New evidence is material if "it is relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (citations omitted).  It is chronologically relevant if it "relates to the period on or before the date of the Administrative Law Judge hearing decision."  20 C.F.R. § 404.970(b).  If these conditions are satisfied, the Appeals Council must review the case to determine whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence." *Id.*

This court, in turn, "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when [the court] reviews the Commissioner's final decision denying Social Security benefits." *Ingram*, 496 F.3d at 1258.  "[W]hen a claimant properly submits new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id.* at 1262.

Here, the medical records from Dr. Prince and Dr. Wilson were not chronologically relevant.  As the Appeals Council correctly observed in its denial of benefits, none of this new evidence relates to the period on or before June 15, 2012, the date of the ALJ's decision.  Dr. Prince was not one of Clough's treating physicians and his records are based solely on his consultative physical examination of Clough on August 31, 2012, more than two months after the

ALJ issued his decision.  Similarly, Dr. Wilson was not a treating mental health provider and his records are based solely on a one-time psychological examination of Clough on September 5, 2012, again more than two months after the date of the ALJ's decision.  Therefore, the records were not relevant to the Appeals Council's consideration of whether to review the ALJ's decision. *See Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 801-02 (11th Cir. 2008) (noting that three reports submitted by the claimant to the Appeals Council, including consultative examination reports from Dr. Prince and Dr. Wilson, "came after [the date of] the ALJ's decision and, therefore, the AC does not consider them in determining whether to review the ALJ's decision").

Even if the medical records from Dr. Prince and Dr. Wilson were chronologically relevant, the court is satisfied that they would not render the ALJ's denial of benefits erroneous.  Even considering this new evidence, the ALJ's decision is supported by substantial evidence and is not contrary to the weight of the evidence as a whole.  Dr. Prince diagnosed Clough as suffering from "multiple fractures, epilepsy, grand mal seizure activity, generalized anxiety disorder, and borderline intellectual functioning" (doc. 11-1 at 3), which is largely consistent with the ALJ's finding that Clough has the severe impairments of epileptic seizures, fractures of the L1 transverse process and T12, generalized anxiety disorder, and depression. (R. 33).  Dr. Wilson's observations regarding Clough's appearance, thought processes, speech, mood, and mental capabilities were consistent with Dr. Bentley's findings (*compare* doc. 11-3 at 2-3 *with* R. 305), and many of the limitations he noted in Clough's abilities were encompassed within the ALJ's RFC finding.  For instance, Dr. Wilson determined that Clough had only mild limitations in his ability to understand, remember, and carry out very short and simple instructions, but had

13

marked limitations in his ability to carry out detailed instructions. (Doc. 11-4 at 1). Consistent with these determinations, the ALJ's RFC finding limited Clough to performing low semi-skilled work and 1-2-3 step tasks. (R. 35). Similarly, Dr. Wilson determined that Clough had moderate or marked limitations in his ability to work in coordination or proximity to others, interact with the general public, and get along with co-workers (doc. 11-4 at 1-2); the ALJ limited Clough to goal-oriented work that deals with things instead of people. (R. 36).

The court does note that Dr. Prince diagnosed Clough with "total disability" and that Dr Wilson opined that Clough's depression and anxiety "would make working very difficult at this point." (Doc. 11-1 at 3; Doc. 11-3 at 4). However, the determination as to whether a claimant is disabled or unable to work is one that is ultimately reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d) (opinions that a claimant is "disabled" or "unable to work" are not medical opinions and are not given "any special significance"; they are "opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case"). Accordingly, Dr. Prince's opinion that Clough is totally disabled and Dr. Wilson's opinion that it would be very difficult for Clough to work would not, in any event, be entitled to any special significance.

The ALJ's decision contains a detailed discussion of the testimony and medical evidence in the record before him and his findings regarding Clough's impairments, limitations, and RFC are consistent with and amply supported by such evidence. The additional evidence Clough submitted to the Appeals Council–none of which is chronologically relevant–did not render the ALJ's denial of benefits erroneous and does not provide a basis for changing the decision.

**B.     The ALJ Considered the Combination of Clough's Impairments**

Clough next argues that the ALJ failed to consider the combination of his impairments in making his disability determination. (Doc. 10 at 19-21). However, he points to nothing in the ALJ's decision that reflects such a failing. He does not even attempt to show how the ALJ allegedly failed to consider his impairments in combination.

Contrary to Clough's naked assertion, the ALJ's decision reflects that he considered the combined effects of Clough's impairments. (*See* R. 33-40). Indeed, in making his RFC finding, the ALJ stated as follows:

> Affording the claimant the greater benefit of doubt, the undersigned finds that the combination of history of epileptic seizures and fractures of L1 and T2 reduces the claimant's functional capacity to no more than light work on a sustained basis with seizure precautions. Furthermore, symptoms associated with generalized anxiety disorder and depression reduce[ ] the claimant's mental capacity to perform no more than low-semiskilled work with allowance for low stress and other factors.

(R. 39). Moreover, the ALJ expressly found that Clough had "severe impairments" but did not have "an impairment or combination of impairments" that met or medically equaled one of the listed impairments. (R. 33-34). Such findings provide sufficient evidence that the ALJ did, in fact, consider the combined effects of Clough's impairments. *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) ("The ALJ specifically stated that [the claimant] did not have an 'impairment, individually or in combination' that met one of the listed impairments. . . . That statement shows that the ALJ considered the combined effects of [the claimant's] impairments during her evaluation."); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002).

**C.     The ALJ Properly Considered Clough's Credibility**

The ALJ found that Clough's statements concerning "the intensity, persistence and limiting effects" of his symptoms were "not credible" to the extent they were inconsistent with

15

his RFC assessment. (R. 38). Clough argues that the ALJ failed to state adequate reasons for finding him not credible. "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529 and 416.929.

Contrary to Clough's argument, the ALJ provided a thorough discussion of his reasons for finding Clough's testimony not credible:

> The claimant simply alleges a greater degree of debilitation than what objective medical evidence can support. If the claimant's back pain had been as bad as he had alleged, there should have been at least some sort of available medical records to confirm his subjective complaints. Instead, there is gross medical non-compliance indicated in the record starting with the very first exhibit ... The claimant alleges a history of ongoing seizures despite taking medication. However, the medical evidence of record indicated that the claimant had just started taking his seizure meds again in April 2012. Interestingly, that same record dated May 2, 2012, indicated that his seizure disorder was ASYMPTOMATIC ... Moreover, the [s]eizure questionnaire completed by the claimant indicated only one seizure per month ... This apparently is during the time that the claimant was "not on any seizure medication" ... Likewise, despite a fracture of T12/L1, the claimant has demonstrated no significant functional deficits, although a pain component could reasonably be expected with medium to heavy work. ...
>
> The undersigned noted that the medical evidence of record made no mention of any motor vehicle trauma. Moreover, the claimant was working as a roofer, climbing ladders, and going across rooftops in October 2009 when he fell from a roof secondary to a seizure. Thus, his work activity does not support any indication that the claimant's lower extremity fractures were causing any significant limitations or restrictions. ...
>
> While the claimant has limitations, no treating physician has indicated that the claimant is disabled. ... The claimant reported he exercises for an hour a day, watchers movies, and helps with housework daily. Such activity certainly does not support the severity, frequency, or intensity of his alleged symptoms.

(R. 38-39). All of these reasons provide a sufficient basis for discrediting Clough's testimony.

### VII. CLOUGH'S MOTION TO REMAND

On June 21, 2014, the same day he filed his Memorandum in Support of Disability,

16

Clough filed a motion to remand the case pursuant to sentence four of § 405(g). (Doc. 11). In his motion, Clough argues that the case should be remanded to require the Appeals Council to consider the medical records from Dr. Prince dated August 31, 2012; the medical records from Dr. Wilson dated September 5, 2012; and medical records from Quality of Life dated October 8, 2012, through May 13, 2013. (Docs. 11-1 to 11-5). Clough contends that he submitted all of these records to the Appeals Council but that they were omitted from the administrative record. (Doc. 11 at 1).

To the extent Clough argues that the case should be remanded for consideration of the medical records from Dr. Prince and Dr. Wilson, his motion is simply a rehashing of his argument that the Appeals Council failed to show that it adequately considered this new evidence. This argument was discussed and rejected in Section VI above.

With respect to the Quality of Life medical records, there is no evidence before the court that Clough provided the records to the Appeals Council or, if he did, that they were received by the Appeals Council before it issued its denial of review on November 12, 2013. Clough contends that the Quality of Life medical records were included with a letter from his counsel to the Appeals Council dated November 11, 2013 (one day before the Appeals Council denied review), and were resubmitted with a letter from his counsel dated November 19, 2013 (one week after the Appeals Council denied review). (Doc. 10 at 2). However, the administrative record does not contain the Quality of Life records or either of his counsel's letters to the Appeals Council. In addition, the Appeals Council's denial of review does not mention the Quality of Life records or the letters. Although Clough attached the Quality of Life records to his motion to remand (doc. 11-5), he did not attach either of the letters he claims his counsel

submitted to the Appeals Council, and they are not part of the record before this court. In sum, there is insufficient evidence in the record for the court to find that Clough submitted the Quality of Life records to the Appeals Council or that he did so in a timely manner.

Therefore, sentence six of 42 U.S.C. §405(g) provides the "sole means" for the court to remand the case to the Commissioner for consideration of the Quality of Life records. *Ingram*, 496 F.3d at 1267. Sentence six provides that a court "may ... at any time order additional evidence to be taken before the Commissioner ... but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention to the district court." *Ingram*, 496 F.3d at 1267.

Clough has not offered any good cause for his failure to incorporate the Quality of Life medical records into the administrative record. Moreover, the records are not "material" evidence because the records are not "relevant and probative so that there is a reasonable possibility that [they] would change the administrative result." *Hyde*, 823 F.2d at 459. The medical records are dated from October 8, 2012, through May 13, 2013, many months after the ALJ issued his decision on June 15, 2012. In addition, the records reflect that Clough's seizures were regularly assessed as "asymptomatic" and his anxiety as "improved." (Doc. 11-5 at 3, 7, 11). In fact, the most recent Quality of Life record from May 2013 does not list seizures or anxiety as issues and includes no treatment plan for either condition. (Doc. 11-5 at 12-14). Finally, to the extent that the records continue to reflect chronic back pain, they still do not

pertain to the period for which Clough seeks benefits and are not relevant or material. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision."); *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) ("An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition.").

For all of the foregoing reasons, Clough's motion to remand is due to be denied.

### VIII. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED** and that Clough's motion to remand (doc. 11) is due to be **DENIED**.

**DONE,** this the 13th day of February.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge